IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           **Plaintiff,**<br><br>v.<br><br>AJA BLOUNT,<br><br>           **Defendant.** | Case No. 3:23-CR-30061-NJR-1 |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss the Indictment filed by Defendant Aja Blount. (Doc. 30). On May 16, 2023, a grand jury charged Blount with possessing a firearm as a felon violation of 18 U.S.C. § 922(g)(1). (Doc. 1). Blount now moves to dismiss the indictment, arguing that 18 U.S.C. § 922(g)(1), as applied to him, violates the Second Amendment in light of the United States Supreme Court's holding in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). For the reasons set forth below, the motion is denied.

### LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that the indictment

must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

A constitutional challenge to a statute can be brought as either a facial challenge or an as-applied challenge. *United States v. Stork*, No. 2:21-CR-7 JD, 2024 WL 2955735, at *2 (N.D. Ind. June 12, 2024). To succeed on an as-applied challenge, as Blount raises here, the moving party must show the statute is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

## DISCUSSION

The Second Amendment to the U.S. Constitution guarantees the right of the people to keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). At the same time, 18 U.S.C. § 922(g)(1) criminalizes the possession of a firearm by any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year. Blount first argues that the plain text of the Second Amendment protects the right to bear arms as to all Americans, including felons. Thus, under *Bruen*, the government must show § 922(g)(1) is consistent with the nation's historical tradition of firearm regulation. Second, he argues, § 922(g)(1) is unconstitutional as applied to him.

The Supreme Court has held that the right to keep and bear arms is among the "fundamental rights necessary to our system of ordered liberty." *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024) (quoting *McDonald v. Chicago*, 561 U.S. 742, 778 (2010)). "Like

most rights," though, "the right secured by the Second Amendment is not unlimited." *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

The test for analyzing the constitutionality of firearm restrictions is provided by *Bruen*. 597 U.S. at 24. Under *Bruen*, a court must first determine whether the "Second Amendment's plain text covers an individual's conduct." 597 U.S. at 24. If so, the Constitution presumptively protects that conduct and the burden shifts to the government to demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* To determine whether a challenged law is consistent with the country's "regulatory tradition," courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 29).

Courts also must examine "[w]hy and how the regulation burdens the right." *Id.* "[I]f laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* But even if the reason for the regulation is permissible, the law "may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id.* "And when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). Although *Rahimi* addressed § 922(g)(8), which bars individuals subject to restraining orders from possessing guns in the home, the Supreme Court reiterated its holding in *Heller* that many

such prohibitions, like those on the possession of firearms by "felons and the mentally ill," are "presumptively lawful." *Id.* at 1891 (quoting *Heller*, 554 U.S. at 626, 627, n. 26).

Here, Blount first argues that the plain text of the Second Amendment covers the possession of firearms by all Americans and that there is no historical tradition of permanently disarming felons like him. Citing *Bruen* and *Heller*, among other cases, the Government disagrees and asserts that the Supreme Court's interpretation of the Second Amendment's text confirms that legislatures are permitted to disarm convicted felons.

True, in *Heller*, the Supreme Court associated the right to bear arms with "law-abiding" citizens. *Heller*, 554 U.S. at 625. And, when describing people who possess rights under the Second Amendment, the *Bruen* court repeatedly used the phrase "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 26. Yet, neither case specifically held that the plain text of the Second Amendment does not apply to felons. As a result, district courts in this Circuit are split on the issue. *See United States v. Stringer*, No. 23-CR-20003, 2024 WL 3609058, at *9 (C.D. Ill. July 30, 2024) (citing *United States v. Khiry Jackson*, 2023 WL 7160921, at *2-3 (N.D. Ill. Oct. 31, 2023) (collecting cases). Due to the lack of clear guidance or controlling authority, this Court will assume, without deciding, that felons are among "the people" protected by the Second Amendment and will proceed to the second step proscribed by *Bruen*: whether § 922(g)(1)'s disarmament of felons "is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

In *Atkinson v. Garland*, the Seventh Circuit Court of Appeals directed district courts to consider five questions when analyzing whether a statute is part of this country's historical tradition of firearm regulation. *Atkinson v. Garland*, 70 F.4th 1018, 1023-24 (7th

Cir. 2023). In summary, this Court is to ask: (1) Does § 922(g)(1) address a "general societal problem that has persisted since the 18th century?" (2) What does history tell us about disarming those convicted of crimes generally and of felonies in particular? (3) Are there broader historical analogues to § 922(g)(1) during the periods that *Bruen* emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons? (4) If there are analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support § 922(g)(1)? and (5) If individualized assessments for a distinction between violent and non-violent felonies are appropriate, how should a court define a non-violent or a non-dangerous felony—and what evidence can a court consider in assessing whether a particular felony conviction was violent? *Id.*

The Government has answered those questions, while Blount has failed to provide any of the analysis required by *Atkinson*. Nor has he disputed the Government's assessment. The Court thus adopts the Government's well-reasoned and well-researched historical analysis. (*See* Doc. 32).

First, Section 922(g)(1) addresses a "general societal problem that has persisted since the 18th century" in that it disarms people who, like felons, are untrustworthy adherents to the rule of law. The historical record discussed by the Government demonstrates that legislatures historically have had wide latitude to exclude felons from exercising certain rights, including the right to bear arms, as a consequence of their convictions. *See* Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 28-29 (1868); *see also United*

*States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'").

Second, by the time the Second Amendment was ratified in 1791, there was an established tradition of legislatures categorically disarming groups who they feared would disregard the law. These regulations prioritized social order and respect for the law over a preexisting right to self-defense. *See Atkinson*, 70 F.4th at 1034 (Wood, J., dissenting) ("During the American Revolution, several states passed laws providing for the confiscation of weapons owned by persons who refused to swear an oath of allegiance to the state or to the United States."). Furthermore, there were no meaningful founding-era disputes regarding the lawfulness of disarming criminals, and throughout early American history, convicted felons were subject to estate forfeiture and even capital punishment for non-violent felonies. If a felon could potentially be subject to the death penalty or forfeiture of their entire estate as punishment for even a non-violent offense, then certainly disarmament would have been an accepted punishment.

Third, this country has a tradition of disarming dangerous persons other than felons. For example, in *Rahimi*, the Supreme Court held that an individual subject to a restraining order, *e.g.*, one who poses a credible threat to the physical safety of another, may be temporarily disarmed consistent with the Second Amendment. 144 S. Ct. at 1902.

Fourth, these historical analogues are sufficiently similar to § 922(g)(1) and are not "isolated instances of regulation." Section 922(g)(1)'s prohibition on firearm possession is comparable to, and is certainly not greater than, the punishment inflicted on criminals

at the founding, which included deprivation of their entire estate or even death. *See Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019) (explaining that "it is difficult to conclude that the public, in 1791, would have understood someone facing death … to be within the scope of those entitled to possess arms").

Having examined the first four factors provided by *Atkinson*, the Court concludes that § 922(g)(1) is consistent with this Nation's historical tradition of firearm regulation and is constitutional. Blount also argues, however, that the statute is unconstitutional as applied to him. Thus, the Court addresses the fifth *Atkinson* factor in considering whether § 922(g)(1) is unconstitutional as applied to Blount.

In *United States v. Gay*, the Seventh Circuit assumed without deciding "for the sake of argument that there is *some* room for as-applied challenges" by non-violent offenders to § 922(g)(1). *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024), *reh'g denied*, No. 23-2097, 2024 WL 3816648 (7th Cir. Aug. 14, 2024) (quoting *Heller*, 554 U.S. at 626, 635).[1] Citing *Bruen*, the Seventh Circuit noted that the Supreme Court repeatedly used the phrase "law-abiding, responsible citizens" when describing people who possess rights under the Second Amendment. *Id.* (quoting *Bruen*, 597 U.S. at 26). The defendant in *Gay* did not fit that description, having been convicted of 22 felonies including aggravated battery of a peace officer and possession of a weapon while in prison. *Id.* at 846-47. Gay

---

[1] In *Gay*, the Seventh Circuit sidestepped the question of whether § 922(g)(1) is constitutional, while at the same time finding the defendant's argument that the Second Amendment permits felons to possess firearms notwithstanding § 922(g)(1) "hard to square" with the Supreme Court's statement in *Heller* that "longstanding prohibitions on the possession of firearms by felons" are valid. *Id.* (quoting *Heller*, 554 U.S. at 626, 635). Some courts in this circuit have since interpreted *Gay* as foreclosing facial challenges to § 922(g)(1). *See, e.g., United States v. Montgomery*, No. 23-CR-00623, 2024 WL 4240759, at *1 (N.D. Ill. Sept. 19, 2024); *United States v. Barenas-Reynoso*, No. 19-CR-00351-8, 2024 WL 3509757, at *2 (N.D. Ill. July 23, 2024).

also possessed the weapon while on parole for his prior felony. *Id.* at 847. The Seventh Circuit emphasized that parole is a form of custody before holding that "parolees lack the same armament rights as free persons." *Id.* The court then concluded that Gay was not a "'law-abiding, responsible' person who has a constitutional right to possess firearms" and rejected his as-applied challenge to the constitutionality § 922(g)(1). *Id.*

Here, Blount has proffered no historical evidence to support his position that he is a non-violent felon and only individuals more dangerous than himself should be subject to permanent disarmament. And, at the time of his arrest in this case, Blount had prior felonies for possession with intent to distribute crack cocaine, possession of a firearm in furtherance of a drug trafficking crime, possession of a firearm as a felon, DUI while suspended for DUI, and unlawful possession of a controlled substance. Like the defendant in *Gay*, the Court finds that Blount is not a "law-abiding, responsible" person who enjoys the constitutional right to possess firearms. Section 922(g)(1) is constitutional as applied to Blount.

## Conclusion

For these reasons, the Court finds that § 922(g)(1) does not violate the Second Amendment as applied to Defendant Aja Blount. The Motion to Dismiss the Indictment (Doc. 30) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   October 30, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**